UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CARLTON MARBURY, | Case No. 1:08CV349 |
| Petitioner, | JUDGE JOHN R. ADAMS |
| v. | |
| STUART HUDSON, Warden, | Magistrate Judge George J. Limbert |
| Respondent. | REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE |

On February 8, 2008, Carlton Marbury, ("Petitioner"), *pro se*, filed a petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. ECF Dkt. #1. Petitioner seeks relief from a judgment of conviction entered by the Cuyahoga County, Ohio Court of Common Pleas for one count of aggravated arson. *Id*. On August 8, 2008, Warden Julius Wilson ("Respondent") filed a return of writ. ECF Dkt. #9. Petitioner did not file a traverse. The case was referred to the undersigned to issue a report and recommendation. ECF Dkt. #5. For the following reasons, the undersigned recommends that the Court DISMISS the instant petition with prejudice.

**I.    FACTUAL BACKGROUND**

The Eighth District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), cert. denied, 119 S.Ct. 2403 (1999). As set forth by the Eighth District Court of Appeals, the facts are:

> {¶ 2} On June 1, 2005, Marbury was indicted on four counts of aggravated arson, in violation of R.C. 2909.02. In count one of the indictment, he was charged with a second degree felony for the physical property that was destroyed as a result of the fire. Counts two through four of the indictment were all first degree felonies because of the risk of serious harm to other individuals as a result of the fire.

> {¶ 3} At his arraignment, Marbury pleaded not guilty, and [sic] jury trial commenced on August 22, 2005. The state presented seven witnesses and rested. At the close of the state's case, Marbury asserted a Crim.R. 29 motion for acquittal. The trial court denied the motion, and Marbury presented his case. After taking the stand himself and then calling his mother as a witness, Marbury rested. On September 1, 2005, the jury returned a verdict finding him guilty of one count of aggravated arson, a felony in the second degree. He was found not guilty on the three remaining counts of aggravated arson. Marbury was sentenced on October 20, 2005 to a term of seven years incarceration.
>
> {¶ 4} The incidents that gave rise to the charges against Marbury began in March 2005, when he moved into a home located on East 79th Street in the city of Cleveland. The owner of the home, Dionne Thomas Carmichael, described the property as a boarding house with five bedrooms that she leased to tenants. Although Carmichael did not have formal written lease agreements with her tenants, they all were aware that the terms of the lease were month-to-month, and they paid rent to her accordingly. In March 2005, Carmichael initiated eviction proceedings against Marbury because she had not authorized him to live in the home, and he was not paying her rent. Marbury and Carmichael had numerous conversations and arguments about his staying in the house; however, he refused to leave.
>
> {¶ 5} On May 3, 2005, Marbury was served with a summons to appear in Cleveland Housing Court regarding an eviction action brought on behalf of Carmichael. On May 6, 2006, [sic] three days after he had received the summons, a fire was set to Carmichael's property. At the time of the fire, tenants Johnny Forte, Wesley Jackson and Emmitt Prayer were renting rooms from Carmichael. Forte testified at trial that on the evening of the fire, Marbury went upstairs to the room where he had been living, stayed in the room for 15 to 20 minutes, and then left the house. Forte stated that roughly 15 minutes after Marbury left the house, the smoke detectors located near Marbury's room activated. When Forte walked upstairs to see what was happening, he was confronted by clouds of dark smoke that filled the upstairs hallway. Forte alerted the other tenants to the fire, and they left the building.
>
> {¶ 6} The Cleveland Fire Department responded to the scene and extinguished the fire; however, the house sustained significant damage. After a thorough inspection of the house, Fire Lieutenant Victor Gill determined that the fire originated in Marbury's room and was intentionally set by an open flame, such as a match or a lighter. After Gill completed his examination, Marbury returned to the house, and Gill questioned him about the fire that had originated in his room. He seemed disinterested and proceeded to eat a sandwich as he spoke with Gill. After observing his behavior, Gill read him his Miranda rights, but Marbury remained nonresponsive. Gill placed Marbury under arrest and conducted a pat-down search, which uncovered a charred Bible and a lighter.

*State v. Marbury*, Case No. 87446, 2006 WL 2981346, (Ohio App. 8 Dist. Oct.19, 2006); ECF Dkt. #9, Ex. 10 at 1-4.

## II. PROCEDURAL BACKGROUND

### A. State Trial Court

In May of 2005 the Cuyahoga County, Ohio Grand Jury returned an indictment against Petitioner charging four counts of aggravated arson in violation of Ohio Revised Code ("O.R.C.")

§ 2909.02.[1] ECF Dkt. #9, Ex. 1. Count One charged Petitioner with causing physical harm to an occupied structure as defined in O.R.C. § 2909.01, to wit: 2277 East 79th Street, Cleveland, Ohio. *Id*. The remaining counts charged Petitioner with creating a substantial risk of serious physical harm by means of fire or explosion to Johnny Forte, Emmitt Prayer, and Wesley Jackson. *Id*.

On August 22, 2005, Petitioner's case was tried before a Cuyahoga County petit jury. ECF Dkt. #9, Attach. 2-5 (hereinafter "Tr."). On August 29, 2005, the jury found Petitioner guilty of Count 1, and not guilty of Counts 2-4. Tr. at 762-66.

On September 12, 2005, Petitioner filed a motion with the trial court to dismiss the indictment on the basis that the jury's acquittal on Counts 2-4 was inconsistent with its conviction on Count 1. ECF Dkt. #9, Ex. 2. On September 27, 2005, the trial court denied the motion. ECF Dkt. #9, Ex. 4.

On October 24, 2005, the trial court docketed a journal entry sentencing Petitioner to 7 years of imprisonment. ECF Dkt. #9, Ex. 5.

### B. Ohio Court of Appeals

On December 6, 2005, Petitioner filed a motion for delayed appeal in the Ohio Eighth District Court of Appeals. ECF Dkt. #9, Ex. 6. On January 17, 2006, the appellate court granted Petitioner's motion. ECF Dkt. #9, Ex. 7. On April 12, 2006,[2] Petitioner filed a brief on the merits raising the following assignments of error:

I. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S APPELLANT'S MOTION FOR ACQUITTAL ON THE CHARGE OF AGGRAVATED ARSON.

II. THE VERDICT OF GUILT [sic] ON THE CHARGE OF AGGRAVATED ARSON WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

ECF Dkt. #9, Ex. 8. On October 30, 2006, the Ohio Court of Appeals for the Eighth District

---

[1] The indictment enumerates Count Three twice, but each charge is distinct. Accordingly, the Court interprets the duplication of "Count Three" as a typographical error. *See* ECF Dkt. #9, Ex. 1.

[2] The date stamp on Exhibit 8 is obscured, but Respondent contends that the brief was filed on April 12, 2006 and does not challenge the instant petition on procedural grounds. So, the undersigned will accept Respondent's representation.

-3-

affirmed Petitioner's conviction.  ECF Dkt. #9, Ex. 10.

### C. Supreme Court of Ohio

On December 14, 2006, Petitioner filed a memorandum in support of jurisdiction with the Supreme Court of Ohio and asserted one proposition of law:

> I. A trial court errs in violation of the right to due process under the Fifth and Fourteenth Amendments to the United States Constitution when the record contains insufficient evidence to support a conviction.

ECF Dkt. #9, Ex. 11.  On March 14, 2007, the Supreme Court of Ohio denied jurisdiction in an unexplained opinion.  ECF Dkt. #9, Ex. 13.

### D. Federal Habeas Corpus Petition

On February 8, 2008, Petitioner filed the instant petition seeking relief from his state court conviction.  ECF Dkt. #1; *see Towns v. U.S.*, 190 F.3d 468, 469 (6th Cir. 1999) citing *Houston v. Lack*, 487 U.S. 266, 270-74 (1988) (a *pro se* prisoner's petition is considered to be filed on the day he delivers it to prison authorities).  Petitioner presents two grounds for relief:

> **GROUND ONE:** A trial court errs in violation of the right to due process under the Fifth and Fourteenth Amendments to the United States Constitution when the record contains insufficient evidence to support a conviction.
>
> **Supporting Facts:** The State failed to produce any direct evidence indicating that Petition [sic] had started the fire.  Not one of the State's witnesses could testify that they saw Petitioner set the fire.  All of the evidence presented at trial established that Petitioner left the scene fifteen to twenty minutes before the smoke alarms went off.  This directly contradicts the testimony by the State's fire investigator concluding that the fire had spread rapidly.
>
> Although, the State paid great attention to the fact that Petitioner was in possession of a charred Bible and a lighter, but the State's own expert was unable to conclusively determine how the fire was started.
>
> State's witness and property owner, Dionne Thomas Carmichael, testified only that she suspected Petitioner had started the fire, but could not back up her suspicion.
>
> As noted by Judge Corrigan, who dissented from the Eighth District's decision affirming Petitioner's sentence: "I would vacate Petitioner's conviction because there was no evidence to tie him to the arson."
>
> In short, the conviction was based solely on speculation and circumstantial facts that were not corroborated by any direct

> evidence.
>
> Accordingly, Petitioner's conviction for Aggravated Arson should be vacated, and the Petitioner should be immediately released.

ECF Dkt. #1. On August 8, 2008, Respondent filed a return of writ. ECF Dkt. #9. Petitioner did not file a traverse.

## III.   PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a writ of federal habeas corpus. As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

Respondent does not challenge the instant petition on the grounds of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations, failure to exhaust state remedies, or procedural default. Therefore, the undersigned will proceed to discuss the merits of the petition.

## IV.   STANDARD OF REVIEW

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
>    (1)   resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

    A.    Decisions of lower federal courts may not be considered.

    B.    Only the holdings of the Supreme Court, rather than its dicta, may be considered.

    C.    The state court decision may be overturned only if:

        1.    It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' (the Supreme Court precedent must exist at the time of petitioner's direct appeal) or;

        2.    the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

        3.    'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

        4.    the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where

>   it should apply.'
>
>   D. Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'
>
>   E. Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

>   (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## **V.      ANALYSIS**

The instant petition lacks merit because the State presented ample evidence at trial to support Petitioner's conviction. An allegation that the verdict was entered upon insufficient evidence must be analyzed under the due process clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307, *reh'g denied*, 444 U.S. 890 (1979); *In re Winship*, 397 U.S. 358 (1970). On habeas review, the District Court cannot weigh the credibility of the witnesses. *Walker v. Engle*, 703 F.2d 959, 969. Nor is the District Court permitted to overturn a conviction merely because it would have acquitted had it acted as the finder of fact. *Brown v. Davis*, 752 F.2d 1142, 1147 (6th Cir. 1985); *Walker,* 703 F.2d at 969. In order to establish an insufficiency of the evidence claim, the relevant inquiry is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Scott v. Mitchell,* 209 F.3d 854, (6th Cir. 2000), *quoting Jackson,* 443 U.S. at 319. The inquiry is not whether the jury made the *correct* determination of guilt or innocence, but whether it made a *rational* decision to acquit or convict. *Williams v. Haviland,* No. 1:05CV1014, 2006 WL 456470, *3 (N.D.Ohio Feb. 24, 2006) (emphasis original), citing *Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). A court should interfere with a jury verdict only to the extent necessary to guarantee the fundamental protections of due process of law. *Scott,* 209 F.3d at 885 (*quoting Jackson,* 443 U.S. at 319).

Here, Petitioner was charged with Aggravated Arson, which is defined by O.R.C. § 2909.02(A)(2) as follows:

> (A) No person, by means of fire or explosion, shall knowingly do any of the following:
>
> \*          \*          \*
>
> (2) Cause physical harm to any occupied structure;

O.R.C. § 2909.02(A)(2). Petitioner challenges whether sufficient evidence was introduced to support a finding that he started the fire. ECF Dkt. #1 at 17.

Petitioner primarily challenges his conviction for a lack of direct evidence. ECF Dkt. #1 at 17. His challenge must fail because "circumstantial evidence alone may be enough to support a

conviction if that evidence is substantial and competent." *See Woodley v. Bradshaw*, Case No. 1:05 CV 0028, 2008 WL 2048209, at *10 (N.D.Ohio May 12, 2008); *see also Dell v. Straub,* 194 F.Supp.2d 629, 647 (E.D.Mich.,2002) ("A conviction may rest on circumstantial evidence and a federal habeas court reviewing the sufficiency of evidence to support a conviction need not rule out all possible interpretations of the circumstantial evidence."). Further, "[i]n considering a habeas petition based on an insufficiency of the evidence claim, a federal court is not permitted to weigh evidence, resolve conflicts in testimony, or render its own determination of guilt or innocence." *Id*. Accordingly, the undersigned recommends that the Court find Petitioner's lack of direct evidence argument to be without merit.

Respondent contends that the State introduced ample evidence at trial of Petitioner's motive, opportunity, and means in order to support a conviction. Upon a review of the trial transcript, the undersigned agrees.

Turning first to evidence surrounding Petitioner's motive to commit the crime, Dionne Thomas Carmichael, the owner of the building, testified that Petitioner never paid rent and she filed a petition in Cleveland Housing Court to have him evicted from the building. Tr. at 278-80. She further testified that Petitioner refused to move out and became very aggressive. *Id*. at 281-82.

In addition to Carmichael's testimony, the State offered the testimony of another resident of the building, Emmitt Prayer. Mr. Prayer testified that Petitioner and Carmichael had a dispute over Petitioner's nonpayment of rent. Tr. at 413-14.

The State also offered evidence of Petitioner's opportunity to commit the crime. The State presented testimony from Johnny Forte, a resident of the building. Mr. Forte testified that, on the night of the fire, he saw Petitioner head toward the stairs and heard footsteps going up the steps. Tr. at 357-58. About 15 to 20 minutes later, Mr. Forte observed Petitioner leave, and approximately 15 minutes after that, he heard four smoke detectors sounding. *Id*. at 358-59. Mr. Forte then went upstairs and observed smoke coming from Petitioner's room. *Id*. at 359-60. Mr. Forte testified that he then observed Mr. Prayer kick Petitioner's door open and could then see a flame on the floor of Petitioner's apartment. *Id*. at 361-62.

Mr. Forte testified that he and Mr. Prayer tried to put out the fire, and then went across the street to tell Ms. Carmichael about the fire. Tr. at 362-66. Mr. Forte testified that he returned to the house an helped another tenant evacuate. *Id*. at 367-69. Then, he waited outside while the fire department came and extinguished the fire. *Id*. He did not see Petitioner until the fire department had left the scene. *Id*. at 369. Mr. Forte testified that Petitioner acted as if he did not know that the building had been on fire. *Id*.

Mr. Prayer confirmed Mr. Forte's testimony that Petitioner did not return until after the fire department left the scene. Tr. at 426. Mr. Prayer testified that Petitioner stated he was glad Carmichael's house caught on fire. *Id*. at 426-27. Mr. Prayer also testified that Petitioner appeared to be happy about the fire. *Id*. at 427.

Although both Mr. Forte and Mr. Prayer observed Petitioner return after the fire department left, and they both observed him act as if he was unaware of the fire, a neighbor, Michael Gross testified that he observed Petitioner standing next to a nearby church watching the fire. Tr. at 394. Mr. Gross then observed Petitioner leave the scene and return about 20 minutes after the fire had been extinguished. *Id*. at 398-99.

Lastly, the State introduced evidence that Petitioner possessed the means to start the fire. Fire Lieutenant Victor Gill testified that he had seven years of experience investigating fires and that he investigated the scene of the fire at issue in this case. Tr. at 461-72. Lieutenant Gill opined that the fire was intentionally set. *Id*. at 485-86. He further opined that the fire was started by an open flame. *Id*. at 488-89. Lieutenant Gill testified that he questioned Petitioner when Petitioner returned to the scene, and he ultimately placed him under arrest. *Id*. at 498. During a search of Petitioner's person, Lieutenant Gill found a charred bible and a cigarette lighter. *Id*. The lighter and bible were then introduced into evidence. *Id.* at 498-501, 549.

As Respondent contends the Court need not consider potentially conflicting evidence, as Petitioner argues that his conviction is not based on sufficient evidence – he does not argue that his conviction was against the manifest weight of the evidence. In fact, consideration of conflicting evidence is inappropriate for a federal habeas court. *See Johnson v. Havener*, 534 F.2d 1232, 1234

(6th Cir. 1976) (" The District Court Judge correctly held that the claim pertaining to the weight of the evidence was not a federal constitutional claim."). Accordingly, the undersigned recommends that the Court find that sufficient evidence was presented at trial to sustain Petitioner's conviction.

## VI. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court dismiss the instant petition on the merits with prejudice.


Date: January 6, 2009                    */s/George J. Limbert*

                                         GEORGE J. LIMBERT

                                         UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).